UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-61270-CIV-LENARD/TURNOFF

BENJAMIN MANDLI,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the undersigned upon Petitioner, Benjamin Mandli's ("Mandli") Motion to Vacate, Set Aside, and Correct Sentence pursuant to 28 U.S.C. § 2255 **[DE 1]**[1] and his memorandum in support **[DE 2]**. These matters were referred to the undersigned for a Report and Recommendation by the Honorable Joan A. Lenard on September 16, 2009[2]. **[DE 7]**.

Upon careful review of the Motion and supporting memorandum, the Response, the Reply, the underlying criminal court file, the applicable law, and being otherwise duly advised in the premises, the undersigned makes the following findings.

### I. Background

In June 2007, Mandli was indicted by a grand jury sitting in the Southern District of Florida and charged with possession of child pornography in violation of 18 U.S.C. § 2252(a)(5)(B) and (b)(2).

---

[1] All references to the instant civil action shall be reflected as **[DE ]**, together with the appropriate docket entry number. References to the underlying criminal action shall be reflected as **[CR-DE ]**.

[2] This matter was effectively stayed for a period of time due to this Court's denial of Mandli's request for discovery **[DE 11]**, and his subsequent appeal **[DE 12]** of same to Judge Lenard.

See United States v. Mandli, Case No: 07-CR-60161-LENARD **[CR-DE 1]**. The sordid details of the FBI investigation, the evidence and the charges are well reflected in both the criminal case docket and the instant docket. As such, it is not necessary to recite them for present purposes.

Mandli pled guilty to the one (1) count[3] indictment on July 26, 2007. **[CR-DE 20]**. A written Plea Agreement was filed on that same day. **[CR-DE 22]**. As part of the Plea Agreement, the Government agreed to recommend between a two to three[4] level downward adjustment. **[CR- DE 22]**. In the interim, Mandli filed several motions for downward departure. **[CR-DE 23, 25]**. In those Motions, Mandli argued that his diminished mental capacity was due to, *inter alia*, (1) Asperger's Syndrome, and (2) substance abuse that was triggered when he was forced to identify his father's remains and ended with him being hospitalized for a drug overdose. **[CR-DE 23]**. In a supplemental Motion, Mandli also indicated that he had been substantially rehabilitated since his arrest. **[CR-DE 25]**. In sum, Mandli argued that these factors warranted a sentence below the recommended Guideline range. These Motions were all denied. **[CR-DE 33]**.

A sentencing hearing was held before the Honorable Joan A. Lenard on October 29, 2007. **[CR-DE 30]**. At the hearing, Judge Lenard adopted the Pre-Sentence Investigation Report (PSIR)[5]. Testimony was heard from Defendant's mother, as well as the FBI case agent, and various medical practitioners who had provided care to Mandli. Sentencing Tr.; **[CR-DE 37]**; **[DE 2, p.53-127]**.

---

[3]The Indictment also included a forfeiture count as to Mandli's laptop computer. **[CR-DE 1]**.

[4]Pursuant to the Plea Agreement, the third level decrease would be recommended if "at the time of sentencing [Defendant's] offense level [was] determined to be 16 or greater." **[CR-DE 22, ¶ 7]**.

[5] The court notes that the PSIR was accepted without objection from Defendant's trial counsel.

At the conclusion of the hearing, Mandli was sentenced to seventy-eight (78) months in prison and supervised release for life. **[CR-DE 30, 31]**. On appeal, the Eleventh Circuit affirmed his sentence. United States v. Mandli, 278 Fed. App'x 955 (11th Cir. 2008); **[CR-DE 63]**. The instant Petition **[DE 1]** followed on August 14, 2009. In the Petition, Mandli claims that his counsel's assistance was so ineffective (at sentencing) as to violate his Sixth Amendment rights, thus necessitating this Court to vacate its previously entered sentence and order a new sentencing hearing. **[DE 2]**. Mandli's specific arguments shall be further detailed *infra*.

## II. Motion for Discovery

As noted *supra* [fn. 2], Mandli filed a Motion for Discovery together with the instant Motion. **[DE 4]**. The motion requested that: (1) his forensic expert be permitted to examine the computer hard drive of the computer at issue, and (2) that his pediatric expert be permitted to examine the images on the computer in order to determine whether they are actually images of prepubescent girls. Id. On October 22, 2009, the undersigned entered an Order Denying Mandli's Motion. **[DE 11]**. An appeal followed on November 4, 2009. **[DE 12]**. On June 1, 2010, Judge Lenard entered an Order affirming this Court's decision. **[DE15, 16]**.

In her Order, Judge Lenard rejected Mandli's arguments and found that Ms. Loehrs'(Mandli's expert) affidavits were "vague and unhelpful." **[DE 16, p. 5]**. Judge Lenard further noted that "Ms. Loehrs' statement that she only found one video on the computer's hard drive [was] undermined by her earlier admission that she was only able to conduct a preliminary examination of the computer." **[DE 16, p. 5]**.

## III. Instant Motion

In his Motion, Mandli argues that the following actions or omission by counsel rendered his

assistance ineffective:

(1) Failure to consult experts, to wit: (a) a forensic computer expert to investigate the character and number of images contained in his laptop; (b) a medical expert who could opine as to the approximate ages of the individuals depicted on the images in the laptop; and (c) an expert that could have contradicted the characterization of the videos as sadomasochistic[6].

(2) Failure to investigate and present the court with therapeutic sentencing alternatives given that: (a) Mandli suffers from Asperger's Syndrome, (b) he was abused by his stepfather, (c) he was forced to identify his father's body after suicide, (d) he was hospitalized for substance abuse, and (e) he poses no threat of recidivism. **[DE 2]**.

## IV. Standard of Review

Pursuant to 28 U.S.C. § 2255, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner may file a habeas petition within one-year of the date upon which his/her conviction becomes final. See 28 U.S.C. § 2255. On May 21, 2008, the Eleventh Circuit affirmed Mandli's conviction. See United States v. Mandli, 278 Fed. App'x 955 (11th Cir. 2008). He did not seek certiorari review with the Supreme Court. The Government concedes that the instant Petition was timely filed. **[DE 13, p. 2]**.

In evaluating claims for ineffective assistance of counsel, the Court must apply the two-part analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). Specifically, the Court must determine: (1) whether counsel's performance was deficient such that it "fell below an objective standard of reasonableness," and (2) whether this deficient performance prejudiced the defense such that a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the

---

[6] As the PSIR indicates, enhancements in the sentencing guidelines were applied for each one of these determinations.

4

proceeding would have been different." Id. at 694. "Unless a Defendant can make both showings, it cannot be said that the conviction or [sentence] resulted from a breakdown of the adversary process that renders the result unreliable." Id. at 687.

Generally speaking, review of counsel's conduct is highly deferential. Id. at 689; Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994). In other words, counsel is "strongly presumed" to have rendered adequate assistance. Strickland, 466 U.S. at 694. Second-guessing with the benefit of hindsight should be avoided. See White v. Singletary, 972 F.2d 1218, 1220 (11th Cir. 1992).

In this connection, tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance. United States v. Costa, 691 F. 2d 1358 (11th Cir. 1982). Similarly, decisions on whether or not to call a witness are generally questions of trial strategy. See Dorsey v. Chapman, 262 F.3d 1181, 1186 (11th Cir. 2001); see also Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997).

In applying the facts of this case to the relevant law, the undersigned finds that Mandli's Motion is without merit. Accordingly, the undersigned hereby **RESPECTFULLY RECOMMENDS** that same be **DENIED**. Each of Mandli's supporting arguments shall be addressed below.

### V. Analysis

**(a) Failure to Consult Experts**

Mandli argues that he is entitled to a new sentencing hearing because trial counsel failed to consult experts to investigate the number and character of the images alleged to have been on Mandli's computer. "Proper investigation," Mandli contends, would have yielded information to challenge the findings of the PSIR concerning the number of images found on his computer hard drive and the prepubescent and sadomasochistic nature of those images.

Additionally, Mandli claims that examination of the hard drive by a forensic computer expert would also have revealed that a "hash value comparison" was not generated.[7] Mandli asserts that the absence of a hash value comparison brings into question the integrity of the evidence against him. However, any issues concerning the Government's "proofs," were waived by Mandli's plea of guilty to the charges contained in the indictment. Accordingly, Mandli's arguments concerning the lack of a hash value comparison are irrelevant to the sentencing ineffectiveness inquiry and, as such, are not addressed herein.

Mandli also asserts that this failure to investigate had a prejudicial impact on the sentencing guideline calculations. Specifically, he argues that given the correct number and character of the images, the PSIR guidelines calculation would have been lower and it is reasonably likely that the Court would have sentenced him to less than seventy-eight (78) months in prison.

These arguments do not persuade.

**1. Reasonableness of Representation**

Mandli has failed to show that the representation provided to him by trial counsel fell below an objective standard of reasonableness. "Even when trial counsel's investigation and presentation is less complete than collateral counsel's, trial counsel has not performed deficiently when a reasonable lawyer could have decided, under the circumstances, not to investigate or present particular evidence." Grayson v. Thompson, 257 F.3d 1194, 1225 (11th Cir. 2001). Under Strickland, trial counsel's performance is afforded a measure of deference, especially with regard to strategic choices to pursue one potential

---

[7] A "hash value" is a unique number automatically assigned systemically to a hard drive that identifies it, along with the data contained thereon. Any change to the hard drive (for example, by adding or deleting files) will change the hash value. When a copy image is made of a hard drive for forensic purposes, that hash value is copied over to ensure that the date on the copy image is a true and accurate copy of the hard drive in question. Without the hash value such conclusions cannot be made and the forensic copy has little or no evidentiary value. **[DE 14, p. 3]**.

defense over another, or to forgo presenting certain evidence in favor of a different strategic approach. See Strickland, 466 U.S. at 689-90.

Here, Mandli pled guilty to the indictment which specifically describes a video containing a compilation of two known prepubescent victims. **[CR-DE 1]**. The indictment identifies the video by its file name which contains such terms as "10yo" and "Pthc," which stand for "10 year(s) old" and "pre-teen hardcore" respectively. **[CR-DE 37]; [DE 2, p. 82]**. At the time of the indictment, nine (9) of the approximately forty-eight (48) images and both video files discovered during a preliminary forensic examination of Mandli's computer by the FBI were positively matched to known, prepubescent victims by the National Center for Missing and Exploited Children. **[DE 13, p. 8]**. Furthermore, Mandli himself advised law enforcement that he used the search terms "preteen girls" and "young girls." **[DE 13, p. 8 n.2]**. He also informed law enforcement that he had recently deleted several videos containing child pornography and most of his child pornography picture collection. He advised the agents, however, that there might still be "one or two" videos depicting child pornography on his computer. **[CR-DE 37]; [DE 2, p. 83]**.

"The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." Strickland, 466 U.S. at 691. Here, given Mandli's own admissions to law enforcement, the charges contained in the indictment and Mandli's plea of guilty to those charges (which is not challenged by Mandli herein), it cannot be said that Mandli's trial counsel acted unreasonably in failing to investigate the evidence against Mandli further. "When a defendant has given counsel reason to believe that pursuing certain investigations would be harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." Id. As the government correctly pointed out, a more detailed examination of Mandli's computer, including a re-creation of

deleted files and a search of his unallocated hard drive space, would likely have revealed more images attributable to Mandli based on his admissions to law enforcement. **[DE 13]**.

Notably, Mandli has not addressed this contention, nor presented any evidence suggesting otherwise. Therefore, Mandli's assertion that "[t]here is no possible tactical reason for counsel to forego the investigation" is without merit. Instead, strategy may explain why counsel did not raise an objection that would likely have resulted in a new indictment and/or additional charges.

### 2. Different Results

Mandli's attempt at a prejudice showing likewise fails. Here, Mandli contends that he was prejudiced by trial counsel's failure to investigate the evidence against him because, given the correct number and character of the images, the PSIR guidelines calculation would have been lower. These arguments are insufficient to warrant relief as they are unsupported and conclusory. An ineffective assistance of counsel claim cannot be supported by bald, unsupported statements. Escobar v. United States, No. 8:07-cv-01979, 2008 WL 906557, at *5 (M.D. Fla. Apr. 2, 2008).

Mandli has failed to provide factual or evidentiary support sufficient to demonstrate that but for trial counsel's failure to consult a forensic computer expert to examine the evidence against him, it is reasonably likely that he would have received a lower sentence. Mandli's contentions stem from the affidavit of his private computer analyst, Ms. Tami Loehrs. **[DE 14-2]**. However, Ms. Loehrs' affidavits offer only speculation and unsupported conclusions of law. Namely, Ms. Loehrs states that she conducted a preliminary examination of Mr. Mandli's computer hard drive and found only one video, not two, and that claims of prepubescent and sadomasochistic content were "questionable."**[DE 14-2]**. These statements are most notably undermined by Mandli's own admissions to law enforcement. As stated *supra*, not only did he advise law enforcement that there might be "one or two" videos of child

8

pornography remaining on his computer, he also advised law enforcement that he had recently deleted *several videos* containing child pornography. **[CR-DE 37]; [DE 2, p. 83]**. The FBI acknowledged that it conducted only a preliminary investigation of the computer hard drive and that a re-creation of deleted files had not been conducted. **[DE 9, p. 4]**. Therefore, the fact that Ms. Loehrs discovered only one video, and not two videos, during her own *preliminary* investigation of Mandli's computer hard drive is without consequence as the record makes clear that an in-depth examination of the hard drive would only have revealed more child pornography attributable to Mandli.

Furthermore, Ms. Loehrs' conclusory statements that it was questionable whether many of the images "would actually fit within the legal definition of 'child pornography,'" and that "the characterization of [the] video as 'sadistic' may not be legally correct" **[DE 14-2]**, are tantamount to unsupported conclusions of law.   Such statements add nothing to the within analysis. In like fashion, Ms. Loehrs' statement that "*many* of the persons depicted in the images . . . did not appear to be pre-pubescent girls," **[DE 14-2]** (emphasis added) is also unhelpful as it is almost implicitly stating that at least *some* of the images do appear to depict minors.

Accordingly, Mandli has failed to show "that any deficient performance prejudiced him such that, without the errors, there is a reasonable probability that the balance of aggravating and mitigating circumstances would have been different." Chandler v. United States, 218 F.3d 1305, 1328 (11th Cir. 2000) (Cox, J., specially concurring).

**(b) Failure to Investigate and Present the Court with Therapeutic Sentencing Alternatives**

Mandli also claims that trial counsel was ineffective at sentencing for failing to investigate and present to the Court therapeutic sentencing alternatives given Mandli's Asperger's Syndrome, and the reasons listed in ¶ III, *supra*.   He specifically argues that trial counsel was deficient in failing to fully

present to the Court the factors that must be considered when imposing a sentence, as stated in 18 U.S.C. §3553(a). In this connection, Mandli asserts that trial counsel "mistakenly limited his argument to a request for downward departure" instead. **[DE 2]**. This rote adherence to downward departure, Mandli argues, prejudiced him and resulted in the imposition of a longer sentence. **[DE 2]**.

### 1. Reasonableness of Representation

The record herein belies the assertion that trial counsel's representation during the sentencing hearing fell below an objective standard of reasonableness. Mandli's claims are most notably undermined by the Alternative Sentencing Proposal submitted to the Court by trial counsel. **[CR-DE 26]**. The Proposal specifically detailed Mandli's prior abuse at the hands of his stepfather, his troubles with his natural father, including the trauma caused by his natural father's death, and his subsequent substance abuse problem. Accordingly, these facts were properly brought to the Court's attention by trial counsel and were clearly rejected.

Furthermore, trial counsel presented extensive evidence to the Court concerning Mandli's diagnosis of Asperger's Syndrome and his ongoing treatment. Specifically, counsel presented the testimony of two medical professionals who had been treating Mandli: Ms. Franco, a psychotherapist, and Dr. Zimmer, a medical doctor with thirty years of experience with specialties in psychiatry, neurology, addiction and psychopharmacology. **[CR-DE 37]**; **[DE 2, p. 66, 92]**.

Dr. Zimmer testified regarding Asperger's Syndrome in general, how he had reached a diagnosis of Asperger's Syndrome with Mandli, and how the disorder affected Mandli. **[CR-DE 37]**; **[DE 2, p. 92-110]**. Dr. Zimmer further testified that Mandli would need long term continued psychiatric and psychotherapy treatment, as well as medications, to deal with the Asperger's disorder. **[CR-DE 37]**; **[DE 2, p. 101]**. Nonetheless, Dr. Zimmer opined that Mandli could "absolutely" control his behavior

and that Mandli had not given any indication of being either a pedophile or predator. **[CR-DE 37]**; **[DE 2, p. 100-101, 110]**.

Ms. Franco similarly testified that she believed Mandli was capable of being fully rehabilitated with continued treatment. **[CR-DE 37]**; **[DE 2, p. 78]**. Ms. Franco further testified that she had never seen a patient exhibit more extraordinary rehabilitation than Mandli and that she believed Mandli was genuinely remorseful for his conduct. **[CR-DE 37]**; **[DE 2, p. 78]**. Ms. Franco detailed Mandli's progress in therapy and stated that Mandli now demonstrated extraordinary insight into the inappropriateness, illegality and immorality of downloading child pornography, and could identify with and had compassion for the victims, which he previously did not. **[CR-DE 37]**; **[DE 2, p. 76-77]**. Ms. Franco also expressly stated that she did not believe that Mandli posed any threat of recidivism. **[CR-DE 37]**; **[DE 2, p. 78]**.

Additionally, trial counsel also proffered to the Court Dr. Reitman's report. **[CR-DE 37]**; **[DE 2, p. 60]**. In this connection, Mandli faults trial counsel for failing to call Dr. Reitman to testify, claiming that Dr. Reitman's testimony was necessary for a "full understanding of the complex underlying mental health illness." **[DE 2]**. This Court is not persuaded. "A petitioner cannot establish ineffective assistance of counsel by identifying additional evidence that could have been presented when that evidence is merely cumulative." Van Poyck v. Fla. Dep't. of Corr., 290 F.3d 1318, 1324 n.7 (11th Cir. 2002). Here, Dr. Reitman's testimony would have been cumulative. Dr. Zimmer had experience in evaluating disorders such as Asperger's, and in fact had originally diagnosed Mandli with the disorder. Furthermore, Dr. Zimmer's testimony demonstrated knowledge and familiarity with Mandli's condition. "The decision to call some witnesses and not others is the epitome of a strategic decision and is one that the courts seldom, if ever, second guess." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir.

1995). In this instance, trial counsel chose to call Dr. Zimmer and Ms. Franco as witnesses, as opposed to Dr. Reitman. This Court will not second guess that decision.

Mandli also asserts that trial counsel was deficient in his performance for failing to effectively present his history to the Court. Mandli admits that "some of this information" was brought to the Court's attention, but argues that it was not done in a manner that effectively advocated on his behalf. This argument also fails to persuade. "We are not interested in grading lawyers' performances." Id. at 1511-12 (quoting White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992)). The Court was well aware of the circumstances concerning Mandli's history and his mother testified at the sentencing hearing as to the effects that these circumstances had on Mandli growing up. As such, this Court cannot say that trial counsel's performance was deficient in this regard.

Mandli further contends that trial counsel failed to argue the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. Mandli specifically argues that counsel failed to properly assert that his unique and complex history warranted a more lenient sentence. In this regard, Mandli contends that trial counsel provided virtually no evidence that Mandli would not be a danger to the community or commit further crimes. The record, however, negates this claim as well. Both Dr. Zimmer and Ms. Franco opined that Mandli was capable of being fully rehabilitated with continued treatment and medication. **[CR-DE 37]**; **[DE 2, p. 78, 101]**. Moreover, as noted *supra,* Ms. Franco specifically stated that she did not believe Mandli posed a threat of recidivism. **[CR-DE 37]**; **[DE 2, p. 78]**. Similarly, Dr. Zimmer testified that Mandli could "absolutely" control his behavior and that Mandli had not given any indication of being either a pedophile or predator. **[CR-DE 37]**; **[DE 2, p. 100-101, 110]**.

Nevertheless, Mandli suggests that in order to properly present the argument that he did not pose a threat of recidivism, "it was incumbent upon counsel to enlist the assistance of a proper expert specializing in psychosexual matters to evaluate him and determine with scientific rigor that he would not recidivate." **[DE 2, p. 42]**. Again, this Court is not interested in "grading" trial counsel's performance. "The test has nothing to do with what the best lawyers would have done. Nor is the test even what more good lawyers would have done. We ask only whether some reasonable lawyer…could have acted, in the circumstances, as defense counsel acted." Waters, 46 F.3d at 1511-12. Here, Mandli's proposed expert would not have provided any new information that had not already been presented to the Court by Dr. Zimmer's testimony. Again, the decision to have Dr. Zimmer testify, as opposed to an "expert specializing in psychosexual matters," is a strategic one and this Court will not second guess trial counsel's decision.

Mandli also contends that trial counsel's most glaring deficiency was his failure to argue that Mandli required ongoing cognitive and behavioral therapy to treat his neurological disorder, treatment that would not be available to him if he were sentenced to a term in prison. However, Dr. Zimmer specifically testified that Mandli would require long term continued psychiatric and psychotherapy treatment. **[CR-DE 37]**; **[DE 2, p. 101]**. Additionally, trial counsel presented testimony and medical reports to the Court concerning Mandli's ongoing treatment and the progress that he was making with treatment. Furthermore, the Court, in reaching its sentencing decision, explicitly acknowledged that it was aware of Mandli's disorders and problems and his need for treatment. **[CR-DE 37]**; **[DE 2, p. 117]**. Mandli also faults trial counsel for never adequately presenting any sentencing alternatives to this Court. However, trial counsel stated to the Court that he had "no hesitation asking your Honor to impose a probationary sentence." **[CR-DE 37]**; **[DE 2, p. 115]**.

13

Based on the foregoing, this Court finds that Mandli has failed to demonstrate that counsel's representation fell below an objective standard of reasonableness.

### 2. Different Results

Even if this Court were to find that trial counsel's performance fell below "reasonable prevailing professional norms," which it does not, Mandli has failed to establish that this putative deficient performance resulted in prejudice. In other words, Mandli has not shown that a "reasonable probability [exists] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

In reaching its sentence, the Court explicitly balanced Mandli's mental health issues, prior history and rehabilitative efforts, together with the particularly heinous nature of child pornography and the law's interest in protecting the children who are victims of child pornography. The issues raised by Mandli fail to convince this Court that a reasonable probability exists "that the balance of aggravating and mitigating circumstances would have been different." Bolender v. Singletary, 16 F.3d 1547, 1556-57 (11th Cir. 1994). Mandli does not, and indeed cannot, argue that trial counsel failed to present *any* mitigating factors to the Court. As such, Mandli has failed to undermine this Court's confidence in the outcome of the sentencing hearing.

### VI. Conclusion and Recommendation

In sum, a review of the record and the applicable law reveals that Mandli was well represented and received a fair and just sentencing hearing. Mandli has failed to demonstrate that trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. As such, Mandli's sentence must stand.

Accordingly, it is **RESPECTFULLY RECOMMENDED** that Petitioner's Motion to

Vacate, Set Aside, and Correct Sentence **[DE 1]** be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1)(c), the parties may file written objections to this Report and Recommendation with the Honorable Joan A. Lenard, United States District Judge, within fourteen (14) days of receipt. Failure to file timely objections shall bar the parties from attacking on appeal any factual findings contained herein. RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149, reh'g denied, 7 F.3d 242 (11th Cir. 1993); LoConte v. Duggar, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958, 109 S. Ct. 397 (1988).

**RESPECTFULLY RECOMMENDED** in Chambers, at Miami, Florida this 11th day of November 2010.

_____
**WILLIAM C. TURNOFF**
**UNITED STATES MAGISTRATE JUDGE**

cc:    Hon. Joan A. Lenard
       Counsel of Record